**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ANGELA MARIE SCISM,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 4:25-CV-1578 RHH** |
| | ) | |
| **FRANK BISIGNANO,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant,** | ) | |

# MEMORANDUM AND ORDER

Plaintiff Angela Marie Scism seeks review of the decision of Defendant Social Security Commissioner Frank Bisignano, denying her application for Supplemental Security Income ("SSI") under the Social Security Act. For the reasons set forth below, the Court reverses and remands the Commissioner's decision.

## I. Background and Procedural History

On May 11, 2023, Plaintiff filed an application for SSI, alleging she was disabled as of January 1, 2010[1], due to dyslexia, Fragile X syndrome, anxiety, depression, post-traumatic stress disorder ("PTSD"), and bipolar disorder. (Tr. 50, 56, 57, 58) The Social Security Administration ("SSA") denied Plaintiff's claim initially in September 2023, and on reconsideration in January 2024. (Tr. 50-64) Plaintiff filed a timely request for a hearing before an administrative law judge ("ALJ"). (Tr. 88) The SSA granted Plaintiff's request for review and conducted a hearing in June 2024. (Tr. 33-49)

[1] Plaintiff later amended her alleged onset date to May 11, 2023. (Tr. 157)

In a decision dated August 19, 2024, the ALJ determined that Plaintiff "has not been under a disability within the meaning of the Social Security Act since May 11, 2023, the date the application was filed." (Tr. 17-32) Plaintiff subsequently filed a request for review of the ALJ's decision with the SSA Appeals Council, which denied review. (Tr. 1-6) Plaintiff has exhausted all administrative remedies, and the ALJ's decision stands as the Commissioner's final decision. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

## II. Evidence Before the ALJ

Plaintiff, born April 23, 1976, testified that she lived in a home with two of her children. (Tr. 40, 56) Plaintiff testified that she took care of her children, but her son has an aide who helps with preparing his meals and doing his laundry. (*Id.*) Plaintiff testified that she did her own grocery shopping, and was able to drive although she limited how often. (Tr. 41-42)

When the ALJ asked how Plaintiff's impairments affected her, Plaintiff responded as follows:

> It's impacting me by not being able to, like work and then, like I get nervous. I forget things. People have to keep repeating themselves because I forget what people say and I just, my anxiety gets really bad and I get, I sometimes will ask people what did you say and they'll have to repeat it over and over…It just stops me from being able to do everyday work or, you know, certain tasks.

(Tr. 39) Plaintiff further testified that she experienced crying spells when her anxiety or nervousness was high. (Tr. 41-43)[2]

A vocational expert also testified at the hearing. (Tr. 44-48) The ALJ asked the vocational expert to consider a hypothetical individual similar in age and education to Plaintiff, with no past relevant work and the following limitations:

---

[2] Plaintiff stated that recently she experienced crying spells every day, and it takes her an hour or more to calm down. (Tr. 42-43)

> Further assume that this individual is limited to work at the medium exertion level. Is able to learn, remember and carry out simple, routine tasks.
>
> Is able to use reason and judgment to make simple, routine work-related decisions. Is able to work at an appropriate and consistent pace while performing simple, routine tasks. Is able to complete simple, routine tasks in a timely manner. Is able to ignore or avoid distractions while performing simple, routine tasks.
>
> Must have only gradual changes in job setting and duties. Is able to sustain an ordinary routine and regular attendance at work while performing simple, routine tasks. Is able to work a full day without needing more than the allotted number or length of rest periods during the day while performing simple, routine tasks.
>
> Can have no contact with the general public but is able to occasionally work close to or with coworkers and supervisors without interrupting or distracting and while performing simple, routing tasks. Can the hypothetical individual perform any work in the national economy?

(Tr. 45-46) The vocational expert stated that such an individual would be able to work as a cook helper (prep cook), industrial cleaner (janitor), or kitchen helper (dishwasher).[3] (Tr. 46) When Plaintiff's attorney modified the hypothetical to state the individual would be absent three to four days per month, the vocational expert opined there would be no competitive employment available in the national economy. (Tr. 47) The vocational expert further testified that there would not be any jobs available in the national economy should the individual be off-task for 10 to 15 percent of the day, or have difficulty appropriately responding to changes in the work setting 33 to 66 percent of the work day. (Tr. 47-48)

With regard to Plaintiff's medical records, the Court adopts the facts that Plaintiff set forth in her Statement of Uncontroverted Facts, which the Commissioner admitted with certain additions

[3] The vocational expert noted that all three positions involved medium exertional level, unskilled work. (Tr. 46)

and clarifications. (ECF Nos. 10-1, 15-1) The Court will cite to specific portions of the transcript as needed to address the parties' arguments.

### III. Standards for Determining Disability Under the Social Security Act

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). Under the Social Security Act, a person is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). *Accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. § 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At step one, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i); *McCoy*, 648 F.3d at 611. At step two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the [twelve-month] duration requirement in § 416.909, or a combination of

impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(ii); *McCoy*, 648 F.3d at 611. To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). At step three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. § 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to step four, the Commissioner assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. § 416.920(a)(4), which is "the most [a claimant] can still do despite [his or her] limitations," 20 C.F.R. § 416.945(a)(1). *See also Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). At step four, the Commissioner determines whether the claimant can return to his or her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. At step five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g), 416.1560(c)(2); *McCoy*, 648 F.3d at 611.

Through step four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At step five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.960(c)(2).

## IV. The ALJ's Decision

The ALJ applied the five-step evaluation set forth in 20 C.F.R. § 416.920 and found that Plaintiff: (1) had not engaged in substantial gainful activity since May 11, 2023, the application date; and (2) as relevant here, had the following severe mental impairments: mood disorder, anxiety disorder, and PTSD, that significantly limited her ability to perform basic work activities as required by SSR 85-28. (Tr. 19) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 20-23)

The ALJ found that, although "the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms", "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (Tr. 24) The ALJ acknowledged that Plaintiff had impairments that reasonably warranted work restrictions. (*Id.*) The ALJ continued as follows, however:

> Overall, the record shows the claimant presented to mental health treatment throughout the relevant period. But for some exacerbation of symptoms in October and November 2023, she consistently reported stability of symptoms and that medication was working well for her even with increased stressors related to caring for her disabled sons. With a change in treatment in November 2023, she again reported stability or improvement in symptoms in December 2023. While mental status examinations revealed waxing and waning of moods in the fall of 2023, they

> were otherwise consistently and repeatedly within normal limits with no cognitive deficits recorded.

(Tr. 25-26) The ALJ found that due to the nature of Plaintiff's impairments, along with the noted exacerbation, "the mental limitations in the above residual functional capacity are reasonably warranted." (Tr. 26)

The ALJ then considered the medical opinions in the record. As relevant here, she found the opinion of Jessica Newby, Plaintiff's treating psychiatric provider[4], partially persuasive, as follows:

> Although she opined the claimant has moderate to marked limitations in her ability to complete a normal workday free of interruptions and respond appropriately to changes in a work setting and would miss three to four days of work per month and be off task 10-15% of the time, she largely opines the claimant's impairments create no more than mild to moderate limitations in her functional capacity. Some internal inconsistency is noted in finding marked limitations and 15% off task and four days of missed work, but this is tempered by her also finding such limitations are only moderate, she marked 10% off task and three days off work. This indicates a range of limitation not wholly inconsistent with the ultimate findings. However, when considering the claimant's maximum functional capacity, the interpretation must be that she opined the claimant has a marked limitation, would be off task 15% of the time, and miss four days of work per month. Therefore, this portion of the opinion is found not persuasive. The remainder of the opinion finding the claimant has no more than moderate limitations is consistent with and supported by the mental health record and her own records showing stability of symptoms with normal mental status examinations. Therefore, this portion of the opinion is found persuasive.

(Tr. 26-27)

The ALJ concluded as follows:

> In sum, the above residual functional capacity assessment is supported by the evidence as a whole and there is no medical opinion in the record supporting greater limitations than those adopted herein. The claimant's subjective complaints are not entirely consistent with the medical evidence and other evidence in the record. The undersigned finds the claimant has not been deprived of the ability to perform work

[4] Ms. Newby is a Board Certified Psychiatric Mental Health Nurse Practitioner. (*See* ECF No. 10, P. 3 n. 1)

> subject to the residual functional capacity assessed by this decision for any 12-month period since the alleged onset date.

(Tr. 27)

After "careful consideration of the entire record," the ALJ determined that Plaintiff had the RFC to perform medium work, except:

> The individual is able to learn, remember, and carry out simple, routine tasks. The individual is able to use reason and judgment to make simple, routine work-related decisions. The individual is able to work at an appropriate and consistent pace while performing simple, routine tasks. The individual is able to complete simple, routine tasks in a timely manner. The individual is able to ignore or avoid distractions while performing simple, routine tasks. The individual must have only gradual changes in job setting and duties. The individual is able to sustain an ordinary routine and regular attendance at work while performing simple, routine tasks. The individual is able to work a full day without needing more than the allotted number or length of rest periods during the day while performing simple, routine tasks. The individual can have no contact with the general public. The individual is able to occasionally work close to or with coworkers and supervisors without interrupting or distracting them while performing simple, routing tasks.

(Tr. 23) Based on the vocational expert's testimony, the ALJ found that Plaintiff had the RFC to perform jobs that existed in significant numbers in the national economy, such as cook helper, industrial cleaner, and kitchen helper. (Tr. 28) The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, since May 11, 2023, the date the application was filed. (*Id.*)

## V. Discussion

Plaintiff claims the ALJ erred in considering the medical opinion evidence and determining her mental RFC, because although "the ALJ found the medical opinion of the treating psychiatric provider was partially persuasive, [] she did not explain why the RFC did not reflect the persuasive 'moderate' limitations in certain categories. Indeed, the ALJ did not address the discrepancy at all." (ECF No. 10, P. 1) The Commissioner responds that substantial evidence supports the ALJ's

decision, and the ALJ was not required to adopt every limitation contained in the opinion she found persuasive. (ECF No. 15)

A. Standard of Judicial Review

A court must affirm an ALJ's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g). "'Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.'" *Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017) (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). A court must consider "both evidence that supports and evidence that detracts from the ALJ's determination, [but it] 'may not reverse the Commissioner's decision merely because substantial evidence supports a contrary outcome.'" *Id*. (internal quotation marks and citations omitted).

A court does not "'reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). Therefore, the Court must affirm the ALJ's decision if "'it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings[.]'" *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (quoting *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011)).

B. RFC Determination

RFC is "the most [a claimant] can still do despite" his or her physical or mental limitations. 20 C.F.R. § 416.945(a)(1). *See also Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ should determine a claimant's RFC based on all relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *Moore*, 572 F.3d at 523 (internal quotation marks and citation omitted).

"Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (internal quotation marks and citation omitted). "However, there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citations omitted). An ALJ "is not limited to considering medical evidence exclusively," as even though the "RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007) (citations omitted). While the Court recognizes that an ALJ "may not draw upon his own inferences from medical reports," *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000), the Eighth Circuit has held that the "interpretation of physicians' findings is a factual matter left to the ALJ's authority." *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016) (citation omitted).

C. Consideration of Medical Opinion Evidence

Plaintiff filed her application for benefits after March 2017. Accordingly, the ALJ's treatment of medical opinion evidence is governed by 20 C.F.R. § 416.920c. Under this regulation, ALJs are to consider all medical opinions equally and evaluate their persuasiveness according to several specific factors – supportability, consistency, the medical source's relationship with the claimant, specialization, and other factors such as the source's understanding of the Social Security Administration's disability policies. 20 C.F.R. § 416.920c(c). ALJs must "articulate in [their] determination or decision how persuasive [they] find all of the medical opinions and all of the prior administrative medical findings in [the] case record." 20 C.F.R. § 416.920c(b).

In evaluating the persuasiveness of a medical opinion, the factors of supportability and consistency are the most important for an ALJ to consider, and the ALJ must explain how he or

she considered the supportability and consistency factors in the determination or decision. 20 C.F.R. § 416.920c(b)(2).[5] An ALJ's failure to address either the consistency or supportability factor in assessing the persuasiveness of a medical opinion requires reversal. *Bonnett v. Kijakazi*, 859 Fed. Appx. 19 (8th Cir. 2021) (unpublished) (per curium) (citing *Lucas v. Saul*, 960 F.3d 1066, 1069-70 (8th Cir. 2020) (remanding where ALJ discredited physician's opinion without discussing factors contemplated in regulation, as failure to comply with opinion-evaluation regulation was legal error)). *See also Starman v. Kijakazi*, No. 2:20-CV-00035- SRC, 2021 WL 4459729, at *5 (E.D. Mo. Sept. 29, 2021). An ALJ need not explain in his or her decision how he or she considered the other factors. 20 C.F.R. § 416.920c(b)(2).

In support of her claim, Plaintiff submitted an April 16, 2024 mental medical source statement from her treating psychiatric provider, Nurse Practitioner ("NP") Jessica Newby. (Tr. 1640-1641) NP Newby listed Plaintiff's mental diagnoses as bipolar 2, generalized anxiety disorder, and PTSD. She found that Plaintiff would be "off task" 10-15% of the time, and would need to leave work prematurely or be absent 3-4 days per month. As relevant here, NP Newby stated Plaintiff was moderately limited[6] in her abilities to maintain attention and concentration for extended periods; and perform activities within a schedule, maintain regular attendance, and be

[5] "Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." 20 C.F.R. § 416.920c(c)(1). "Consistency. The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 416.920c(c)(2).

[6] "Moderately Limited" is defined as follows: "Impairment levels are compatible with some, but not all, useful functioning. Considered to be 1 standard deviation below the norm, or 30% overall reduction in performance." (Tr. 1640)

punctual within customary tolerances. She found Plaintiff was moderately to markedly limited[7] in her abilities to complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and to respond appropriately to changes in the work setting.

As noted above, The ALJ found NP's opinion partially persuasive, as follows:

> Although she opined the claimant has moderate to marked limitations in her ability to complete a normal workday free of interruptions and respond appropriately to changes in a work setting and would miss three to four days of work per month and be off task 10-15% of the time, she largely opines the claimant's impairments create no more than mild to moderate limitations in her functional capacity. Some internal inconsistency is noted in finding marked limitations and 15% off task and four days of missed work, but this is tempered by her also finding such limitations are only moderate, she marked 10% off task and three days off work. This indicates a range of limitation not wholly inconsistent with the ultimate findings. However, when considering the claimant's maximum functional capacity, the interpretation must be that she opined the claimant has a marked limitation, would be off task 15% of the time, and miss four days of work per month. Therefore, this portion of the opinion is found not persuasive. The remainder of the opinion finding the claimant has no more than moderate limitations is consistent with and supported by the mental health record and her own records showing stability of symptoms with normal mental status examinations. Therefore, this portion of the opinion is found persuasive.

(Tr. 26-27)

Defendant argues that the ALJ was not required to adopt every limitation contained in the opinion that she found persuasive. However, Plaintiff is not arguing that the ALJ had to adopt every limitation; "rather, Plaintiff is arguing that once a medical opinion is found to be persuasive, an ALJ must *explain any inconsistencies* between the limitations found in that opinion and the ultimate RFC." *Robertson v. Dudek*, No. 4:24-CV-00337-NCC, 2025 WL 812142, at *4 (E.D.

---

[7] "Markedly Limited" is defined as follows: "More than Moderate, but less than extreme resulting in limitations that seriously interfere with the ability to function independently. Considered to be 2 standard deviations below the norm, or 60% overall reduction in performance." (Tr. 1640)

Mo. Mar. 13, 2025) (emphasis in original). Plaintiff's argument aligns with the Eighth Circuit's position on this issue:

> The Court acknowledges that there is no requirement that an ALJ accept all limitations proposed by a source, even when the ALJ finds the opinion persuasive or gives it significant weight….However, the ALJ is not entitled to pick and choose only evidence in the record buttressing his [or her] conclusion….The Eighth Circuit has also recognized that in some cases, the ALJ's rejection of evidence without giving reasons renders this Court unable to determine whether any such rejection is based on substantial evidence.

*Bedore v. Kijakazi*, No. 4:22-CV-567-SPM, 2023 WL 6064854, at *4 (E.D. Mo. Sept. 18, 2023) (internal quotation marks and citations omitted). "Consistent with the above principles, courts have frequently found remand required where an ALJ finds a medical opinion persuasive, yet declines to include some of the limitations found in that opinion in that RFC and does not explain why." *Id.* at *5 (collecting cases).

The Court finds the ALJ's consideration of NP Newby's opinion is not the model of clarity. The ALJ appears to take issue with NP Newby's finding of marked limitations in Plaintiff's abilities to complete a normal workday free of interruptions and respond appropriately to changes in a work setting. (*See* Tr. 27 ("Some internal inconsistency is noted in finding marked limitations and 15% off task and four days of missed work…")) The ALJ continues to find the internal inconsistency is "tempered by [NP Newby] also finding such limitations are only moderate, she marked 10% off task and three days off work." (*Id.*) The ALJ notes the moderate range "indicates a range of limitation not wholly inconsistent with the ultimate findings." (*Id.*) After concluding that "when considering the claimant's maximum functional capacity, the interpretation (of NP Newby's statement) must be that she opined the claimant has a marked limitation, would be off task 15% of the time, and miss four days of work per month", the ALJ finds this portion of the opinion not persuasive. (*Id.*). She continues as follows: "The remainder of the opinion finding

the claimant has no more than moderate limitations is consistent with and supported by the mental health record and her own records showing stability of symptoms with normal mental status examinations. Therefore, this portion of the opinion is found persuasive." (*Id.*)

As the Court construes the foregoing, it appears the ALJ specifically found NP Newby's conclusion that Plaintiff would be absent from work four days per month not persuasive. By agreeing that Plaintiff had moderate limitations in her abilities to "maintain regular attendance", "be punctual within customary tolerances", and "complete a normal workday and workweek without interruption from psychologically based symptoms", however, the ALJ appears to find NP Newby's conclusions that Plaintiff would miss three days of work per month and be off task 10% of the time persuasive. She did not incorporate those limitations into her hypothetical to the vocational expert or her RFC, however, nor did she address why the limitations were omitted. (Tr. 23, 45-46)

The Court "'cannot speculate whether or why an ALJ rejected certain evidence.'" *Bedore*, 2023 WL 6064854, at *5 (quoting *Jones v. Chater*, 65 F.3d 102, 104 (8th Cir. 1995)). As a result, "remand is necessary to fill this void in the record." *Lutz v. Kijakazi*, No. 4:20-CV-1140-SPM, 2022 WL 782300, at *5 (E.D. Mo. Mar. 15, 2022) (internal quotation marks and citations omitted). Otherwise, "the Court would be required to determine in the first instance whether there was substantial evidence to support the ALJ's decision to reject that limitation." *Berry v. Kijakazi*, No. 4:20-CV-890 RLW, 2021 WL 4459699, at *9 (E.D. Mo. Sept. 29, 2021) (citing *Jones*, 65 F.3d at 104). The record before the Court is inadequate to permit meaningful review as to whether the decision to omit the limitations from the RFC was supported by substantial evidence. *See Kenneth J.V. v. Kijakazi*, No. 22-cv-373 (KMM/DJF), 2023 WL 2394397, at *9 (D. Minn. Jan. 27, 2023).

The Court further finds that the ALJ's error does not appear harmless. A remand is not necessary "if the ALJ's failure to explain the rationale for his omission of an explicit limitation [ ] would have no impact on the outcome of the case." *Kenneth*, 2023 WL 2394397, at *9 (citations omitted). Here, however, in response to questioning from Plaintiff's attorney the vocational expert testified that should the hypothetical individual be absent three to four days per month, or be off-task for 10 to 15 percent of the day, there would be no competitive employment available in the national economy. (Tr. 47-48) As such, if the ALJ had included a moderate impairment in Plaintiff's ability to attend work and/or consistently stay on task in the RFC, the outcome might have been different. *See Titus v. O'Malley*, No. 4:23-CV-00129-JSD, 2024 WL 620364, at *4 (E.D. Mo. Feb. 14, 2024).

On remand the ALJ should consider all the functional limitations in NP Newby's opinion, "and should either incorporate those limitations into the RFC or explain why any excluded limitation was not adopted." *Bedore*, 2023 WL 6064854, at *6.

**VI. CONCLUSION**

For the foregoing reasons, the Court finds that the ALJ's decision is not supported by substantial evidence.

Accordingly,

**IT IS HEREBY ORDERED** that this action is **REVERSED AND REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration in accordance with this Memorandum and Order.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 10th day of September, 2026.

RODNEY H. HOLMES
UNITED STATES MAGISTRATE JUDGE